UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAMONE LAUDERDALE, )<br>    Petitioner, )<br>  vs. )<br>SUPERINTENDENT )<br>    Respondent. ) | CAUSE NO. 3:14-cv-001636-PPS |

**OPINION AND ORDER**

A prison disciplinary hearing body found Lamone Lauderdale guilty of conspiring with a prison guard to smuggle contraband into the facility. He has filed a habeas corpus petition seeking to have that finding of guilt vacated. An earlier guilty finding was set aside by Judge Springmann because Lauderdale had been denied the opportunity to have witness statements considered by the hearing officer. *Lauderdale v. Superintendent*, 3:13-cv-00620 (N.D. Ind., J. Springmann, petition filed June 24, 2013). So there was a rehearing, and Lauderdale again was found guilty. It is from that guilty finding that Lauderdale now seeks habeas relief.

In Ground One, Lauderdale argues that it was a violation of double jeopardy for the prison to have re-tried him on this charge after the original finding of guilt was overturned. However, as this court explained in the order granting him habeas corpus relief, "prison officials are free to retry Lauderdale on this charge if they so choose." 3:13-cv-00620, DE 17-1 at 4 (citing *Meeks v. McBride*, 81 F.3d 717, 722 (7th Cir. 1996) (double jeopardy principles do not apply in the prison disciplinary context)). Lauderdale appealed that order and the Seventh Circuit explained that "[t]he only possible basis for Lamone Lauderdale's appeal is that it would violate double jeopardy to be charged in separate prison disciplinary

proceedings based on the same offense. But this court and every other circuit to address the issue has concluded that double jeopardy does not apply to prison disciplinary proceedings." 3:13-cv-00620, DE 29-1 at 1-2 (citing *Meeks v. McBride*, 81 F.3d 717, 722 (7th Cir. 1996); *Garrity v. Fiedler*, 41 F.3d 1150, 1152-53 (7th Cir. 1994); *United States v. Simpson*, 546 F.3d 394, 397 (6th Cir. 2008)).

Nevertheless, Lauderdale again asserts in this case that it was a violation of double jeopardy for the prison to have re-charged him and found him guilty again. Simply put, it was not. Double jeopardy does not apply in prison disciplinary proceedings and this argument is not a basis for habeas corpus relief in this case. Though Lauderdale also argues that it was a violation of prison policies to have made him face these same charges again, the violation of a prison rule is not a basis for habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations omitted.)).

In Ground Two, Lauderdale argues that he was denied due process because internal affairs left exculpatory evidence out of its report. However he does not identify what evidence was omitted nor how it was exculpatory. Lauderdale argues that he requested prison documents proving that he had children, but such a document would only have duplicated his own testimony. The exclusion of duplicative evidence is permitted because "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits . . . ." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Lauderdale also argues that he

2

requested that a telephone number on his phone list be reviewed because it was mentioned during his interview with internal affairs. Lauderdale does not explain any further, and doesn't say what this telephone number is or how it could have been exculpatory, or what it had to do with anything. Lauderdale hasn't rationally or plausibly argued that the information was or could have been exculpatory, so the DHB's failure to follow up on the phone number did not constitute a denial of Lauderdale's due process.

Lauderdale also argues that he was not provided with a lay advocate of his choice. But since he had no right to a lay advocate in the first instance, this can't possibly be a basis for habeas corpus relief. *See Wolff v. McDonnell*, 418 U.S. 539, 570 (1974) (lay advocate only required when the inmate is illiterate or the issues are complex); *see also*, *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992). This is because Lauderdale is plainly not illiterate, nor was he unable to represent himself during the disciplinary hearing. *(See* DE 6 (17-page, typed, single-spaced brief in support of his habeas corpus petition with numerous citations and 47 pages of exhibits) and DE 11 (9-page, typed, single-spaced traverse with numerous citations).)

Lauderdale claims that he was denied due process when he was denied a continuance so that he could go to his cell to retrieve paperwork he had prepared for the hearing, and so he could "review evidence he requested and to properly prepare a defense with his law advocate." (DE 6 at 13.) Again, he provides no explanation for what this paperwork was or how it was relevant. Neither does he explain why he did not bring it to the hearing, nor why he hadn't properly prepared a defense earlier. Part of the problem,

3

he says, is that at his hearing he was given a summary of a phone recording to be used as evidence against him; he says according to Indiana policy he should have been given the summary at least 24 hours in advance. Though *Wolff v. McDonnell*, 418 U.S. 539 (1974), requires that an inmate be given 24-hour advance written notice of the factual basis of the charges against him, it does not require that he be granted a continuance. "*Baxter v. Palmigiano*, 425 U.S. 308 (1976), warns the courts of appeals not to add to the procedures required by *Wolff*, which, *Baxter* held, represents a balance of interests that should not be further adjusted in favor of prisoners." *White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001). Lauderdale did not have a due process right to a continuance. As for what he was given 24 hours before the hearing, he doesn't claim he was deprived of knowledge of the factual basis of the charges against him, which is what *Wolff* requires that he get; he essentially says he wasn't shown all of the evidence in advance. Even if that were a violation of Indiana policy (which I don't need to address, so I won't), as I've said the purpose of a federal case isn't to litigate adherence to state departmental policies. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also*, *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995) ("This description was sufficient to inform Whitford of the nature of the charge and to allow him to attempt to collect evidence for his defense. Thus, the notice was constitutionally sufficient, and the district court properly granted summary judgment to Suits. ").

Lauderdale argues that he was denied due process because, even though the DHB had the inmate witness statements he requested, the hearing officer may not have read and considered them. However, "an adjudicator is entitled to a presumption of 'honesty and integrity' absent clear evidence to the contrary." *Perotti v. Marberry*, 355 Fed. Appx. 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Here, it is mere conjecture that the hearing officer refused to consider the evidence before the DHB. This is not a basis for habeas corpus relief.

Finally, with respect to Ground Two, Lauderdale argues that he was denied due process because the DHB did not obtain a statement from each of a released inmate and a former staff member. However, prison disciplinary hearing officers do not have the power to compel a response from those outside the prison. *See White*, 266 F.3d at 768.

In Ground Three, Lauderdale argues that there was insufficient evidence to have found him guilty. After reviewing the entirety of the file in this case, I couldn't disagree more. First, here's how the Conduct Report described the incident:

> Internal Affairs began an investigation involving Offender Lamone Lauderdale, 132421 and the possibility of him conspiring with a staff member to traffic. The investigation was confirmed. The officer involved gave up one offender that he was dealing with. This officer also showed me a text he received stating it was okay to pick up the package that was left for him. The items retrieved from the officer contained marijuana and tobacco. The text number was traced back to offender Lauderdale and his telephone calls were monitored. During certain conversations it was discovered that Lauderdale did in fact have two civilians come to Bunker Hill and drop off these packages.

(DE 9-1.) There is a Confidential Internal Affairs File in this case, and the file was summarized for Lauderdale as follows:

> A copy of the phone transcripts and text messages between parties were viewed. The male offender (Lauderdale's PIN) and female caller had multiple conversations about "picking the kids up" and "dropping the kids off." In an attempt to make a 3-way call, a message was left for the third party about the "kids" and "when they would be picked up and dropped off." One female caller (identified as Casey) stated she was with the offender's sister when "dropping off the kids." Lauderdale was informed by one female caller that the guy had been caught. At this time, Lauderdale stated he was playing a game and wanted to make sure the "kids made it."
> Review of the officer's statement specifically stated that he was involved in trafficking marijuana and tobacco into the facility. This officer was stopped prior to entering the facility and subsequently had his vehicle searched which produced the marijuana intended to be trafficked.
> Offender Lauderdale requested the Case File to be reviewed. Due to safety and security reasons this offender cannot see the confidential file. Offender will receive a copy of this summary of evidence.

(DE 9-3 at 4.)

The respondent filed the confidential internal affairs file under seal. (DE 10.) The DHB had access to this file and it was entitled to rely on confidential reports included in this file when making its decision. *See Whitford v. Boglino*, 63 F.3d 527, 535 (7th Cir. 1995) (citing *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985)). I have reviewed the sealed documents and agree that they must remain sealed for safety and security reasons. *Id.* Moreover, my review of these documents demonstrates that there was sufficient evidence to find Lauderdale guilty.

"[T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of

6

evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks and citations omitted). "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 457 (1985). In making the determination that there was sufficient evidence to find him guilty, I did not re-weigh the evidence. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

Lauderdale argues that he has children and that the repeated references to "the kids" in the undercover recordings are references to his actual children rather than his contraband shipments. The argument is preposterous. The context of the calls make it clear that it is not children that are being discussed. This – with the other evidence in the confidential file – is sufficient to link Lauderdale through his calls to the officer who was caught attempting to smuggle contraband into the prison. Because there was more than sufficient evidence to have found Lauderdale guilty of attempted trafficking, the habeas corpus petition is **DENIED**.

Finally, Lauderdale moved in January 2015 for entry of default judgment in this case. (DE 15.) In the motion he argues that he has demonstrated that his rights were violated, so he should prevail in this case. The motion for entry of default judgment is a motion for a decision on the merits of the case, which is the substance of this Order, so that motion is likewise **DENIED**. (DE 15.)

SO ORDERED.
ENTERED: May 22, 2015

/s/ Philip P. Simon
**Chief Judge**
**United State District Court**